UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARK FITZSIMMONS,

    Plaintiff,

vs.                                            CASE NO.: 2:19-cv-182-FtM-29NPM

BIOMET, INC., BIOMENT
ORTHOPEDICS, LLC and
BIOMET MANUFACTURING CORP.

    Defendants.

_____

**PLAINTIFF MARK FITZSIMMONS' RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF TRACY WINGATE**

Plaintiff Mark Fitzsimmons offers the following Memorandum of Law in Opposition to Defendant's Motion to Exclude the Testimony and Opinions of Tracy Wingate. Pursuant to Federal rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), Plaintiff respectfully requests that this Court deny in its entirety Defendants Biomet, Inc., Biomet Orthopedics, LLC, and Biomet Manufacturing, LLC (formerly known as Biomet Manufacturing Corp.) (collectively, "Defendants" or "Biomet"), Motion to Exclude the Testimony and Opinions of Tracy Wingate.

## INTRODUCTION

This is a products liability action involving the defective and dangerous M2a-Magnum metal-on-metal hip implant designed, manufactured, and sold by Biomet. Defendants seek to exclude the testimony of Plaintiff's expert Tracy Wingate, a certified life care planner, licensed occupational therapist, and a fellow at the International Academy of Life Care Planners. (Wingate Dep. at 17:15-18:9, attached hereto as Exhibit A). Ms. Wingate prepared a Medical

1

Cost Projection ("MCP") in this case, pricing out the future care that Dr. Kantor opines the Plaintiff will need. The purpose of her testimony is to show *the costs* of the care Plaintiff will need, and not to determine *what* care Plaintiff will need. Defendants do not argue that Ms. Wingate's method of pricing out Plaintiff's care is flawed in any way. Rather, they argue only that her MCP should be excluded because she relied on orthopedic surgeon medical expert Dr. Kantor to determine what medical care to price out in her projection. This is not grounds for exclusion of Ms. Wingate's testimony. Ms. Wingate is acutely familiar with the standards governing life care plans, and medical cost projections like the one she prepared in this case. Her methodology in this case was not unlike the methodology she, and other life planners, typically use to complete a medical cost projection. Any concerns the Defendants have regarding her reliance on Dr. Kantor can and should be addressed on cross-examination. The Court should, therefore, deny Defendants Motion to Exclude the Testimony and Opinions of Tracy Wingate.

## LEGAL STANDARD

The admissibility of expert testimony is governed by the Federal Rules of Evidence, including but not limited to Rules 702, 403, and 104. *See Hendrix ex rel. G.P. v. Evenflo Co.,* 609 F.3d 1183, 1193 (11th Cir. 2010). The trial judge acts as a "gatekeeper" for testimony based on scientific, technical, and other specialized knowledge. *See Daubert v. Merrell Dow Pharms. Inc.,* 509 U.S. 579, 588 (1993); *Kumho Tire Co., v. Carmichael*, 526 U.S. 137, 141 (1999). Under *Daubert* and Rule 702 of the Federal Rules of Evidence, an expert witness can only give opinion testimony if the witness is qualified by "knowledge, skill, experience, training or education." Fed. R. Evid. 702.

If the expert is qualified, then his testimony is admissible if it will "help the trier of fact to understand the evidence or to determine a fact in issue"—i.e., if it is relevant; and, if the expert employed reliable methods, meaning that his opinion is "based upon sufficient facts or

data." Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 597. The proponent of expert testimony does not have the burden to "prove" anything. He must, however, "demonstrate that the witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005).

An expert witness's testimony must represent "scientific knowledge." "The *Daubert* requirement that the expert testify to scientific knowledge—conclusions supported by good grounds for each step in the analysis—means that *any* step that renders the analysis unreliable under the *Daubert factors renders the expert's testimony inadmissible.*" *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1245 (11th Cir. 2005) (quotations omitted, emphasis in original).

The *Daubert* Court laid out a list of factors that courts may consider in some cases, including whether a theory can be and has been tested; whether the theory has been subject to peer review and publication; the known rate of error; and whether the technique is generally accepted in the scientific community. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (citing *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002), and *Daubert*, 509 U.S. at 593-94). However, "these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis." *Id.* (citing *Kumho Tire*, 526 U.S. at 150).

Though the trial court acts as the "gatekeeper" to ensure the reliability of expert testimony, the *Daubert* Court emphasized that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

# ARGUMENT

Defendants' do not argue that Ms. Wingate is unqualified, nor do they argue that her method of calculating the costs of Plaintiff's future care is unreliable. Rather, Defendants' only argument is that Ms. Wingate's MCP is unreliable because she did not complete a full life care plan for Mr. Fitzsimmons. That is, Defendants take issue only with the *type* of care listed on the MCP and *not* the projected cost of that care, or the method in which Ms. Wingate calculated that costs. However, the goal of Ms. Wingate's opinions is not to determine what future surgeries the Plaintiff will need—Plaintiff's expert Dr. Kantor opines on this issue. Instead, Ms. Wingate's Medical Cost Projection seeks to determine how much any future surgeries and related care predicted by Dr. Kantor will cost. The methodology Ms. Wingate used in preparing that Projection is reliable and her opinions will assist the trier of fact.

**A. Ms. Wingate's methodology is reliable for creating a Medical Cost Projection, and any arguments that she did not consider relevant evidence should be addressed by the trier of fact.**

*Daubert* requires an expert's testimony to "rest[] on a reliable foundation." *Daubert*, 509 U.S. at 597. "The inquiry is "a flexible one," and the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1305 (11th Cir. 2014) (quoting *Daubert*, 509 U.S. at 594–95). The Supreme Court has noted that an expert should, "whether basing testimony on professional studies or personal experience, employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.,* 526 U.S. at 152. And that, therefore, "a trial court must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.*

Defendants attempt to argue that Ms. Wingate's methodology in preparing her Medical Cost Projection is unreliable because she did not take each and every one of the suggested steps

in the Standards for Life Care Plans. (*See generally* Def. Ex. E, Doc. 122-5). However, first, Ms. Wingate did not prepare a full life care plan in this case, so some of the steps present in those Standards were unnecessary. Second, the reality is that, although she did not prepare a full life care plan, her methodology was largely the same and guided by the same standards she would typically use. Defendants mischaracterize Ms. Wingate's testimony in an attempt to make it seem as though Ms. Wingate did not approach the MCP in this case with the same level of intellectual rigor that she would use in preparing a life care plan. For example, Defendants claim that Ms. Wingate testified that she would have spoken to Plaintiff's close family members if she had done a life care plan. (Def. Br., Doc. 122, at 9). Ms. Wingate's actual testimony stated:

> Q. If you were preparing a life care plan for Mr. Fitzsimmons, would you have spoken to his family members, such as his wife?
>
> A. **Not necessarily**.

(Ex. A, Wingate Dep. at 42:16-19) (emphasis added). Similarly, Defendants state that Ms. Wingate testified that she would have reviewed the depositions of Dr. Stolarski, Dr. Kelso, or Mr. Fitzsimmons if she were preparing a life care plan for Mr. Fitzsimmons. (Def. Br., Doc. 122, at 9). This is also incorrect. Although Ms. Wingate testified that she did not review those depositions in this case, she never testified that she would have reviewed them if she had prepared a full life care plan for Mr. Fitzsimmons, nor does she testify that she typically does so, or that it is something the Standards require. (*See* Ex. A, Wingate Dep. at 39:5-9; 40:18-41:1; 41:5-7; 117:5-9; 133:23-24). In fact, when asked whether she believed that statements or testimony of explanting physician Dr. Stolarski would be "important information to gather when you are preparing a medical cost projection for Mr. Fitzsimmons" Ms. Wingate replied "[n]o." (Ex. A, Wingate Dep. at 39:5-12). And, the Standards for Life Care Planners relied on by

Defendants do not list deposition testimony as a required source of information for a life care plan. (*See* Def. Ex. E., Doc. 122-5, at 8-10).

Indeed, Ms. Wingate testified that she followed substantially the same methodology here as she would creating a life care plan. Ms. Wingate testified that "[t]he medical cost projection in this – I basically use the same type of methodology where I would consult with the physician and project costs." (Ex. A, Wingate Dep. at 33:3-5). She explained the relevant differences between a life care plan and a medical cost projection as follows:

> Q. Do any of the standards of practice in this Standards for Life Care Planners apply when a life care planner prepares a medical cost projection?
>
> A. I think you'll find that life care planners that do their work do adhere to methodology and do try to be consistent in how they do things. But these standards of practice are written for life care planning purposes. So, for instance, if I'm just called up by an attorney and says, hey, can you price out what a hip replacement cost, I can do that. I don't even have to talk to a physician to do that. I can purely price out hospitalization and the costs associated with that. That's called a medical cost projection. So it's different than a life care plan.

(*Id.* at 127:20-128:6). Ms. Wingate further testified,

> Q. Is a medical cost projection less reliable than a life care plan?
>
> A. No. No, I'm still using similar methodology. I'm relying on the physician to give information as far as what the person currently needs, needs in the future. I'm relying on them to provide that type of information. And then I'm pricing it in the same manner. I just -- This is basically a limited cost projection where I'm looking at future surgical needs.

(*Id.* at 33:14-22) and,

> Q. Would you agree with me that it would be a more comprehensive evaluation, which is required under the standard of practice for life care planners, to not only get information from an expert witness, but also get information from surgeons who have treated the patient?
> …
> A. So any questions about would anything be more comprehensive or not, no, I already have information from a medical expert, so I don't think it would be more comprehensive.

(*Id.* at 44:1-24). Defendants' characterization of the differences between the methodology used to prepare a full life care plan and a medical cost projection is exaggerated. Ms. Wingate used

6

the same methodology she, and other life care planners, typically use to price out the future surgeries. (Ex. A, Wingate Dep., at 33: 20-21). Defendants take issue with the fact that Ms. Wingate described her methodology as "basically consult[ing] with Dr. Kantor on what future problems were going to incur, when that was going to be, what he was going to need, and then pric[ing] it." (*Id.* at 44:1-11.) However, courts have described the sufficient methodology for life care planning in a nearly identical fashion, stating "[b]asically, [Plaintiff's expert] provided recommendations regarding [Plaintiff]'s future medical needs, and [the life care planner] provided a calculation of the associated costs, based on her knowledge, experience, and research. [The life care planner] permissibly relied on [the Expert's] medical opinion." *Bayes v. Biomet, Inc.*, No. 4:13-CV-00800-SRC, 2020 WL 5594059, at *9 (E.D. Mo. Sept. 18, 2020) (citing Fed. R. Evid. 703). Thus, the fact that Ms. Wingate did not independently decide which medical procedures to price out, and instead relied on orthopedic surgeon medical expert Kantor, does not render her cost projections unreliable.

Further, courts have held that any failure by a life care planner to consider relevant evidence in making her assessment is a question of weight and not admissibility. For example, in *Blair v. Samardjich*, 2003 WL 25764890, at * 1 (S.D. Ga. Sept. 23, 2003), the court held:

> [A]ny failure by Butler to rely on the relevant evidence in making her assessment is something that can be addressed by Defendant on cross-examination. Finally, the conclusion that Butler's opinions are speculative is a matter more appropriately determined by the jury. The issues raised by Defendant, ultimately issues regarding the credibility of the expert, are issues which are more properly resolved through "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."

*Id.* (*citing Daubert,* 509 U.S. at 96, 113 S.Ct. at 2798.) Similarly, in *Smithers v. C & G Custom Module Hauling*, 172 F. Supp. 2d 765, 773 (E.D. Va. 2000), defendants argued that the life care planner's projections "lack[ed] sufficient foundation and are otherwise too speculative to be

admissible." *Id.* The court found, however, that these arguments "go to weight, not the admissibility of the proposed evidence." *Id.* Additionally, in *Cosmo v. Carnival Corp.*, No. 16-22933-CIV, 2017 WL 4785639, at *4 (S.D. Fla. Oct. 16, 2017), the court addressed an argument similar to the one here. There, defendant argued that reliance on a single physician's opinions about the plaintiff's medical condition rendered the life care planner's report unreliable. *Id.* The court found, however, that

> [g]iven the dependent nature of Ms. Pennachio's life care plan, the undersigned declines to exclude her expert opinion and defers to the district judge application of those portions, if any, that become relevant once [plaintiff]'s medical condition resulting from the accident is established ***at trial.***

*Id.* (emphasis added). That is, the court did not take issue with the life care planner's reliance on a single physician's opinion, despite conflicting opinions of other doctors in the case. Again, the court decided that the issue was better decided at trial. *Id.*

Defendants take issue with the fact that Ms. Wingate did not conduct a review of the Plaintiff herself and relied on the opinions of Dr. Kantor, but none of the steps necessary for such a review would have changed the price of a given future surgery. And, Ms. Wingate clearly testifies that conducting her own review of Plaintiff and his medical records would have been redundant and unnecessary in this case because she already reviewed that information in the form of Dr. Kantor's report. (Ex. A, Wingate Dep., at 114: 7-23). The price of the future medical treatment would be calculated the same no matter what. Defendants do not argue that Ms. Wingate's methodology in this calculating these numbers was flawed. As Ms. Wingate herself noted, "my projections are accurate. If the jury wants to believe that he doesn't need them, then they just wouldn't include them. But my projections are accurate." (Ex. A, Wingate Dep. at 134:23-135:2). Ms. Wingate's assessment in this regard is correct, as noted above, it is the jury's role to determine the weight they give to Ms. Wingate's report. Because Defendants' concerns

8

go to the weight and not the admissibility of the testimony, the Court should not exclude Ms. Wingate's projections.

### B. Ms. Wingate's cost projections relating to Plaintiff's future surgeries is helpful and should be excluded by the court at this stage in litigation

Defendants final argument is essentially a restatement of their Daubert motion to exclude Dr. Kantor's opinions relating to the future surgeries that Mr. Fitzsimmons will need. They argue that Ms. Wingate's projections of these future surgeries are unhelpful because they based on Dr. Kantor's opinions, which Defendants argue are inadmissible. Dr. Kantor opines that, more likely than not, Mr. Fitzsimmons will require a revision surgery in the future. (Kantor Dep. at 251:10-16, attached hereto as Ex. B). He gives four possible issues that could necessitate such a revision surgery: infection, periprosthetic pelvis/acetabular fracture, periprosthetic femur fracture, or hip dislocation. (*Id*.) Ms. Wingate priced out each of these options in her Medical Cost Projection. (*See* Def. Ex. B, Doc. 122-2). Defendant argues that Dr. Kantor's opinions, and the related cost projection, for all four surgeries should be excluded.

However, Dr. Kantor's opinions relating to the four surgeries at issue are admissible under Florida Law. Dr. Kantor's report indicates that due to Mr. Fitzsimmons' young age at implant surgery (55 years) he will in all likelihood require even more difficult reconstructive revision procedures that are associated with increased risk and well documented complications. (Kantor Report at 27, attached hereto as Exhibit C). Because of continuing osteolysis (bone loss) that is progressive, future revision and reconstructive procedures to his right hip will be required. (*Id.*) Dr. Kantor made it clear that Mr. Fitzsimmons will more likely than not experience a periprosthetic fracture. (Ex. B, Kantor Dep. at 251:10-16.) Dr. Kantor also testified in no uncertain terms that Mr. Fitzsimmons will require a re-revision due to periprosthetic fracture during his lifetime. (*Id.* at 249:15-250:4.) Plaintiff has met his burden to establish through Dr.

9

Kantor's testimony that these future medical expenses are reasonably certain to be incurred. *See Montesinos v. Zapata,* 43 So.3d 97. 99 (Fla. 3d DCA 210).

Put simply, Mr. Fitzsimmons suffers tissue damage, necrosis and bone loss due to Biomet's product. (Kantor Report, Ex. C, at 26.) As a result, Dr. Kantor is able to say to a reasonable degree of medical certainty that Mr. Fitzsimmons will require future treatment and this treatment may be further complicated by fractures, dislocations or infections that result from the tissue damage, necrosis and bone loss. (*Id.* at 18.) This is not just based on Dr. Kantor's personal experience and observation. According to his report, there is a significantly increased risk of dislocations, infections and peri-prosthetic pathologic fractures published in multiple joint registries in countries. (*Id.* at 17.)

Biomet's argument stems from Dr. Kantor's unwillingness to specifically divide up the risk profile for each potential future surgery. Mr. Fitzsimmons could require revision surgery because of a pelvic, acetabular, femur fracture or infection. Dr. Kantor, in response to Biomet's counsel's questions and Ms. Wingate's life care plan questionnaire, attempted to provide an estimated percentage of re-revision surgery attributable to each of those causes. (Kantor Dep., 252:8 – 252:24; 253:9-254:19.) However, Dr. Kantor was not opining as to the percentage chance of a re-revision surgery, generally, when he provided these estimates. He had already made clear, more likely than not, that future re-revision surgery will be required. Therefore, one of Ms. Wingate's future surgery cost projections will be helpful to the jury. So, the cost projections for all four should not be excluded. The question of which projection will ultimately be submitted to the jury to calculate damages is an issue for trial, and not one to be addressed on

a *Daubert* motion. *Cosmo v. Carnival Corp.*, No. 16-22933-CIV, 2017 WL 4785639, at *4 (S.D. Fla. Oct. 16, 2017).[1]

On a similar note, Defendants argue that cost projections for medical treatment associated with any future surgeries should also be excluded. However, the same logic as above applies. Plaintiff concedes that ultimately the cost projections for medical treatment relating to all four surgeries should not be submitted to the jury. However, because Dr. Kantor has opined to a reasonable degree of medical probability, more likely than not, that Mr. Fitzsimmons will require a re-revision surgery, the costs projections for one of these surgeries, and the associated medical treatment, will be helpful to the jury in calculating damages. Again, the question of *which* set of surgery-related medical costs should be submitted to the jury is not an issue of admissibility and should be addressed by the Court at a later date. At this stage in the litigation, the fact that Mr. Fitzsimmons will, more likely than not, incur the costs of one of these surgeries, and the associated medical treatment, is sufficient. Thus, the Court should not exclude all of Ms. Wingate's cost projections relating to future surgeries.

## CONCLUSION

For the forgoing reasons, the Court should deny Defendants' Motion to Exclude the Testimony and Opinions of Tracy Wingate.

Respectfully submitted,

/s/ Matthew S. Mokwa
Matthew S. Mokwa (FL 47761)
**THE MAHER LAW FIRM, PA**
271 W. Canton Ave., Suite 1
Winter Park, FL 32789
Telephone: (407) 839-0866
Facsimile: (407) 425-7958
mmokwa@maherlawfirm.com

---

[1] Further, Plaintiff is willing to concede that the cost projection for a revision surgery due to infection should not be the one submitted to the jury. (See Def. Ex. B, Doc. 122-2, at 19).

/s/ Brian J. Madden
Brian J. Madden (MO 40637)
Nathaniel M. Jones (MO 61474)
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel. (816) 701-1100
Fax (816) 531-2372
bmadden@wcllp.com
njones@wcllp.com

**ATTORNEYS FOR PLAINTIFF
MARK FITZSIMMONS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of October 2020, I filed the foregoing document with the Clerk of Court for the U.S. District Court, Middle District of Florida. I also certify that the foregoing document is being served this day on all counsel of record via Case Management/Electronic Case Filing System ("CM/ECF").

*/s/ Matthew S. Mokwa*