```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

MARK FITZSIMMONS,

       Plaintiff,

v.                              Case No:   2:19-cv-182-FtM-29NPM

BIOMET ORTHOPEDICS, INC.,
BIOMET, INC., and BIOMET
MANUFACTURING CORP.,

       Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on the defendants' Dispositive Motion for Summary Judgment and Memorandum of Law (Doc. #121) filed on October 2, 2020.  Plaintiff filed a Memorandum in Opposition (Doc. #135) on October 16, 2020, to which defendants' filed a Reply (Doc. #140) on October 23, 2020.  For the reasons set forth below, the motion is granted in part and denied in part.

**I.**

**A. Factual Background[1]**

In December 2008, plaintiff Mark Fitzsimmons underwent a

---

[1] The background facts are either undisputed or read in the light most favorable to plaintiff as the nonmoving party. However, these facts, accepted at the summary judgment stage of the proceedings, may not be the "actual" facts of the case. See Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 925 n.3 (11th Cir. 2000).

surgical procedure to implant an M2a Magnum hip device. (Doc. #121, pp. 2-3; Doc. #135, p. 1.)  The M2a Magnum is a metal-on-metal articulating device designed, manufactured, and sold by defendants (collectively "Biomet"). (Doc. #1, ¶¶ 3-5; Doc. #121, p. 2; Doc. #135, p. 1.)  The M2a Magnum consists of several components made of a titanium alloy and a cobalt-chrome-molybdenum alloy. (Doc. #121-4, p. 254.)  Prior to the procedure, the implanting surgeon discussed the risks with plaintiff, but did not warn about the health effects of metal wear or metallosis. (Doc. #121, p. 2; Doc. #121-1, pp. 65-69; Doc. #121-3, p. 203; Doc. #135, p. 1.)  Following the surgery, plaintiff was essentially pain free for approximately eight years. (Doc. #121-1, p. 81.)

In the summer of 2016, plaintiff began hearing a clicking and squeaking noise from his hip and started experiencing pain. (Id. pp. 83-84.)  A subsequent blood test revealed plaintiff had "excessively high" metal ion levels. (Id. p. 88; Doc. #135-6, p. 68.)  Specifically, plaintiff's cobalt serum level was 184.3 and his chromium serum level was 112.2 micrograms per liter; normal levels are .1 to .4 and less than 1.4, respectively. (Doc. #135-6, p. 69.)  Based on these numbers, revision of the Magnum M2a was medically necessary and conducted in April 2017. (Id. pp. 69-71.)  Plaintiff's postoperative diagnosis included a failed total hip, excessively high cobalt and chromium levels, and significant metallosis. (Id. pp. 71-72.)

**B. Procedural Background**

In May 2017, plaintiff filed a five-count Complaint against Biomet, alleging claims of (1) strict liability for (a) manufacturing defects, (b) design defects, and (c) inadequate warnings, (2) negligence, (3) breach of implied warranties, (4) breach of express warranty, and (5) failure to warn. (Doc. #1, pp. 7-14.) As relief, plaintiff seeks, *inter alia*, compensatory and punitive damages. (Id. p. 14.)

Plaintiff's case, one of thousands filed against Biomet, was consolidated for pretrial proceedings into a Multi-District Litigation (MDL) action in the United States District Court for the Northern District of Indiana. In re: Biomet M2A Magnum Hip Implants Prods. Liab. Litig., 896 F. Supp. 2d 1339 (J.P.M.L. 2012). After considerable pretrial proceedings in the MDL court, the case was transferred back to this district in February 2019. (Doc. #56; Doc. #57.) The parties then engaged in case-specific discovery until September 2020, and the matter is set for trial in June 2021. (Doc. #108; Doc. #150.)

On October 2, 2020, Biomet filed the summary judgment motion currently before the Court. (Doc. #121.) For various reasons, the motion argues Biomet is entitled to summary judgment on all of plaintiff's claims, and that the request for punitive damages should be dismissed. (Id. pp. 1-25.) In his Memorandum, plaintiff notes that he does not oppose summary judgment on the manufacturing

defect claim, nor the breach of implied and express warranty claims. (Doc. #135, p. 1.) However, plaintiff argues there are material disputes of fact preventing summary judgment on the design defect and failure to warn claims, as well as sufficient evidence to support an award of punitive damages. (Id. pp. 1-18.)

**II.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citation omitted). A fact is "material" if it may affect the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson, 357 F.3d at 1260 (quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the nonmoving party. Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "[i]f reasonable minds might differ on the

4

inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ. for Bibb Cty., 495 F.3d 1306, 1315 (11th Cir. 2007).

### III.

**A. Design Defect**

The first count of the Complaint alleges strict product liability, asserting that the M2a Magnum "was in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce." (Doc. #1, ¶ 26.) Specifically, plaintiff alleges the M2a Magnum

> was not reasonably safe for the intended use, subjecting Plaintiff and others to risks, including the risk that the acetabular component would not properly grow into the bone, causing the hip system to prematurely fail and requiring a complex, risky, and painful surgery to remove and replace the defective product[.]

(Id.)

A product may be defective by virtue of a design defect, a manufacturing defect, or an inadequate warning. Jennings v. BIC Corp., 181 F.3d 1250, 1255 (11th Cir. 1999). "In order to hold a

manufacturer strictly liable for a design defect, the plaintiff must establish: (1) the manufacturer's relationship to the product in question; (2) a defect in the product; and (3) proximate cause between the defective product and the plaintiff's injury." Jozwiak v. Stryker Corp., 2010 WL 743834, *6 (M.D. Fla. Feb. 26, 2010) (citing West v. Caterpillar Tractor Co., Inc., 336 So. 2d 80, 87 (Fla. 1976)).[2]

Biomet first argues it is entitled to summary judgment on the design defect claim because of "lack of admissible expert testimony establishing medical causation." (Doc. #121, p. 8); see Payne v. C.R. Bard, Inc., 2014 WL 1887297, *2 (M.D. Fla. May 12, 2014) ("Expert testimony is generally necessary to prove that a complex product like a medical device is defective."); Savage v. Danek Med., Inc., 31 F. Supp. 2d 980, 983 (M.D. Fla. 1999) ("A defect must be proven by expert testimony."). Biomet argues that because the opinions of the two experts plaintiff has retained to opine on

---

[2] A federal court sitting in diversity applies the substantive law of the state in which it sits. Ferrero v. Associated Materials, Inc., 923 F.2d 1441, 1444 (11th Cir. 1991). In his Memorandum, plaintiff briefly suggests Missouri law may apply because plaintiff was first injured when the M2a Magnum was implanted in Missouri. (Doc. #135, p. 8 n.3.) The Court disagrees. See George v. Wright Med. Tech., Inc., 2020 WL 5880479 (N.D. Feb. 7, 2020) (determining Florida law applied where hip device was implanted in Illinois but subsequently removed in Florida); Schenone v. Zimmer Holdings, Inc., 2014 WL 12619899 (M.D. Fla. Mar. 5, 2014) (determining Florida law applied where medical device was implanted in New Jersey but subsequently removed in Florida).

design defect and medical causation are inadmissible, plaintiff has produced no evidence of causation. (Doc. #121, pp. 9-10.) Biomet also argues it is entitled to summary judgment because plaintiff has failed to disclose any of his treating physicians as non-retained experts, and because the remaining evidence establishes that the M2a Magnum did not cause plaintiff's injuries. (Id. pp. 10-14.) The Court disagrees.[3]

The two experts at issue were retained by plaintiff to (1) determine if the M2a Magnum implanted in plaintiff was "unreasonably dangerous and defective in a manner that caused premature failure" (Doc. #124-1, p. 21), and (2) opine on, *inter alia*, injuries that may occur due to metal-on-metal bearing surface failures (Doc. #125-4, p. 146). Plaintiff's engineering expert concluded that all of Biomet's metal-on-metal hip systems, including the M2a Magnum, are defective in design, and that plaintiff's implant had several specific design defects. (Doc. #124-1, pp. 137-44.) Plaintiff's medical expert opined that plaintiff "sustained permanent and irreversible damage" to his hip caused by the M2a Magnum. (Doc. #125-4, p. 168.) Such opinions constitute evidence of both design defect and medical causation,

---

[3] In prior motions, Biomet sought to exclude the testimony and opinions of the experts at issue. (Doc. #124; Doc. #125.) While the Court granted the motions in part, it did not preclude the witnesses from testifying as to a variety of opinions, including those relevant now. (Doc. #146.)

7

and therefore preclude summary judgment.  See Bayes v. Biomet, Inc., 2020 WL 5095346, *11 (E.D. Mo. Aug. 28, 2020) ("Biomet contends that Plaintiffs have failed to show that any design defect in the M2a Magnum caused Mary's injuries specifically.  Biomet first argues that Plaintiffs cannot establish specific causation because [plaintiffs' medical causation experts'] case-specific opinions are inadmissible. . . .  Because the Court has denied Biomet's motion to exclude the specific causation opinions of [the medical causation experts], this argument fails.").[4]  Furthermore, to the extent Biomet argues summary judgment should also be granted on plaintiff's standalone negligence claim (Count Two) due to lack of admissible expert testimony establishing medical causation (Doc. #121, pp. 1, 8), that argument is similarly rejected.

**B. Failure to Warn**

Count One of the Complaint alleges a claim of strict liability based on, *inter alia*, inadequate warnings.  See Jennings, 181 F.3d

---

[4] Biomet also argues that even if the expert opinions are admissible, they are still insufficient to create an issue of fact as to causation. (Doc. #121, p. 14.)  Biomet suggests the experts have contradictory opinions as to malposition and migration of the implant, and therefore "their testimony taken as a whole fails to establish either that a defect in the M2a Magnum or Biomet's negligence was, more likely than not, a substantial contributing factor that caused the Plaintiff's injuries."  (Id. pp. 14-16.)  The Court disagrees.  To the extent the expert's opinions regarding malposition or migration differ, the opinions regarding design defect and causation are still admissible and create a disputed issue of material fact precluding summary judgment.

at 1255 (noting that a product may be defective by virtue of an inadequate warning). Additionally, plaintiff asserts a standalone failure to warn claim in Count Five, which alleges Biomet had a duty to warn of the risks associated with the use of the M2a Magnum, that it failed to adequately warn plaintiff and his physician of such risks, and that such failure was the direct and proximate cause of plaintiff's injuries. (Doc. #1, ¶¶ 52-58.) Accordingly, plaintiff's failure to warn claims are based on both strict liability (Count One) and negligence (Count Five) theories. See Am. Coastal Ins. Co. v. Electrolux Home Prods., Inc., 2019 WL 5068577, *3 (M.D. Fla. Oct. 9, 2019) ("Florida tort law includes *both* a strict liability and a negligence version of failure to warn."); Marzullo v. Crosman Corp., 289 F. Supp. 2d 1337, 1347 (M.D. Fla. 2003) ("The difference between negligent failure to warn and failure to warn under a strict liability theory is that a prima facie case of strict liability failure to warn does not require a showing of negligence." (marks omitted)).

"Under Florida Law, a claim for failure to warn, whether in negligence or strict liability, requires a plaintiff to show '(1) that the product warning was inadequate; (2) that the inadequacy proximately caused her injury; and (3) that she in fact suffered an injury from using the product.'" McCasland v. Pro Guard Coatings, Inc., 799 Fed. App'x 731, 733 (11th Cir. 2020) (quoting Eghnayem v. Boston Sci. Corp., 873 F.3d 1304, 1321 (11th Cir.

9

2017)). "While in many instances the adequacy of warnings . . . is a question of fact,' the Florida Supreme Court has held that 'it can become a question of law where the warning is accurate, clear, and unambiguous.'" Eghnayem, 873 F.3d at 1321 (quoting Felix v. Hoffmann-La Roche, Inc., 540 So. 2d 102, 105 (Fla. 1989)). "To warn adequately, the product label must make apparent the potential harmful consequences. The warning must be of such intensity as to cause a reasonable man to exercise for his own safety caution commensurate with the potential danger." Farias v. Mr. Heater, Inc., 684 F.3d 1231, 1233 (11th Cir. 2012) (quoting Scheman-Gonzalez v. Saber Mfg. Co., 816 So. 2d 1133, 1139 (Fla. 4th DCA 2002)).

However, for medical devices such as the M2a Magnum, "the duty to warn is directed to physicians rather than patients under the 'learned intermediary' doctrine." Eghnayem, 873 F.3d at 1321 (quoting Hoffmann-La Roche Inc. v. Mason, 27 So. 3d 75, 77 (Fla. 1st DCA 2009)).[5] "This is so because the prescribing physician acts as an intermediary between the manufacturer and the consumer, weighing the potential benefits of a device against the dangers in deciding whether to recommend it to the meet the patient's needs."

---

[5] "Although Florida state case law regarding the learned intermediary has solely dealt with prescription drugs, we see no distinction in this instance between drugs, devices, or other prescription products." Rounds v. Genzyme Corp., 440 Fed. App'x 753, 755 n.2 (11th Cir. 2011).

Id. (citing Felix, 540 So. 2d at 104). Accordingly, "[i]n determining the adequacy of a warning, the critical inquiry is whether it was adequate to warn the physician of the possibility that the [device] may cause the injury alleged by the plaintiff." Small v. Amgen, Inc., 134 F. Supp. 3d 1358, 1367 (M.D. Fla. 2015) (citing Upjohn Co. v. MacMurdo, 565 So. 2d 680, 683 (Fla. 1990)).

In the motion, Biomet argues plaintiff's failure to warn claims fail as a matter of law because (1) the M2a Magnum's instructions-for-use are adequate, and (2) plaintiff cannot establish that any alleged failure to warn proximately caused his injuries. (Doc. #121, pp. 17-21.) Because the Court agrees with the latter argument, it need not address the former. See Bayes, 2020 WL 5095346, * 14 ("Because the Court grants summary judgment on this [failure to warn] claim based on Plaintiffs' failure to show causation, the Court need not consider Biomet's alternative argument that the warning was adequate as a matter of law.").

"[I]n order to recover for a manufacturer's failure to warn, a plaintiff must prove that the manufacturer's failure to warn the physician was the proximate cause of the injuries to the plaintiff." Edgar v. Danek Med., Inc., 1999 WL 1054864, *6 (M.D. Fla. Mar. 31, 1999). "In other words, the plaintiff must show that the physician would not have used the device in question if he or she had been warned by the manufacturer of its risks." Id. However, "[w]here a physician fails to review the warnings issued

11

by the manufacturer, proximate cause cannot be established." Fields v. Mylan Pharm., Inc., 751 F. Supp. 2d 1260, 1263 (N.D. Fla. 2009); see also Thom v. Bristol-Myers Squibb Co., 353 F.3d 848, 856 (10th Cir. 2003) ("The majority of courts that have examined the issue have held that when a physician fails to read or rely on a drug manufacturer's warnings, such failure constitutes the 'intervening, independent and sole proximate cause' of the plaintiff's injuries, *even where the drug manufacturer's warnings were inadequate*."); In re Wright Med. Tech. Inc., Conserve Hip Implant Prods. Liab. Lit., 127 F. Supp. 3d 1306, 1359 (N.D. Ga. 2015) ("[W]here a warning is provided, but a physician does not read it or rely on it, a person cannot assert a failure to warn claim, even if the warning is defective."); Rydzewski v. DePuy Orthopaedics, Inc., 2012 WL 7997961, *7 (S.D. Fla. Aug. 14, 2012) ("The Court also points out that Dr. Zahn testified that he did not read the package insert. Thus, it is unclear how the inclusion of additional warnings in that insert would have prevented the incident." (citation omitted)).

Having reviewed the record evidence, the Court finds plaintiff has adduced insufficient evidence to create a question of fact as to causation. It is undisputed there is no evidence plaintiff's implanting surgeon ever read the instructions-for-use provided by Biomet. (Doc. #121, p. 20; Doc. #135, p. 2; Doc. #121-3, pp. 208-09.) Furthermore, the surgeon agreed (1) that he

12

selected the M2a Magnum for plaintiff "based solely on [his] professional and [his] clinical experience" with the device, (2) that he did not select the M2a Magnum for plaintiff "based on any marketing materials" he received from Biomet, and (3) that he did not select the M2a Magnum "based on anything that [he] heard from Biomet distributors or sales representatives."[6] (Doc. #121-3, pp. 207-08.) The surgeon also testified that while Biomet may have provided him information about the M2a Magnum, he would have "independently researched metal-on-metal hip implants" prior to using them, and that he "would have discussed it with [his] colleagues, and [they] would kind of decide whether it was worth doing or not." (Doc. #135-1, pp. 37-38.)

Based on this evidence, the Court concludes that even if it agreed Biomet provided inadequate warnings, plaintiff cannot prove proximate cause for her failure to warn claims.[7] See Morris v. Biomet, Inc., 2020 WL 5849482, *10 (D. Md. Sept. 30, 2020) ("Regarding the role that Biomet's warnings played in his selection of the Biomet Device, although Dr. Jacobs testified that it is his

---

[6] This testimony effectively undermines plaintiff's argument that an issue of causation exists because Biomet provided the surgeon with marketing materials that allegedly misrepresented the M2a Magnum's wear rates. (Doc. #135, pp. 15-16.)

[7] The Court's conclusion also applies to the Complaint's standalone negligence claim (Count Two) to the extent it is also based on a failure to warn. (Doc. #1, ¶¶ 33-39.)

13

standard practice to familiarize himself with the indications received from the manufacturer, he did not specifically recall whether he read the IFU prior to Plaintiff's surgery. And perhaps most notably, Dr. Jacobs testified, 'I make my own decisions. I research it in peer-reviewed literature. I, by and large, don't rely on representatives of companies to give me information,' 'I get my information independently as opposed to from manufacturers,' and 'I would glean most of my information from the metal-metal world in general,' . . . . Thus, the evidence overwhelmingly shows that Dr. Jacobs placed little weight on Biomet's warnings, indicating that different warnings would not have altered his decision-making." (citations omitted)); Bayes, 2020 WL 5095346, *13 (granting summary judgment on failure to warn claim based on lack of causation where implanting surgeon admitted to not reading the instructions-for-use and testified that he relied on professional meetings and medical literature to alert him of potential risks); Beale v. Biomet, Inc., 492 F. Supp. 2d 1360, 1370-71 (S.D. Fla. 2007) (finding plaintiffs had not presented any evidence to suggest physician "was influenced by Biomet in any fashion in his decisions to use the device in his patients" when, *inter alia*, physician testified (1) "that his decisions as to patient selection were based upon his years of experience as a joint-replacement surgeon, and his research into the various types of replacement joints available on the market,"

and (2) "that none of Biomet's marketing materials influenced his decisions in any fashion"). As plaintiff has failed to present evidence of causation, a necessary element of the claims, the Court grants defendant summary judgment on both the strict liability (Count One) and negligence (Count Five) failure to warn claims.[8]

### C. Punitive Damages

The Complaint requests, *inter alia*, an award of punitive damages from Biomet. (Doc. #1, p. 14.) The summary judgment motion asserts this request should dismissed for a variety of reasons. (Doc. #121, pp. 22-25.) Biomet first suggests that because "all of Plaintiff's substantive liability claims fail, his claim for punitive damages likewise fails as well." (Id. p. 22.) As the Court disagrees that all of the claims in the Complaint are subject to summary judgment, this argument is rejected.

Next, Biomet argues that even if the Court finds one or more of plaintiff's claims survive summary judgment, plaintiff nonetheless cannot meet the "high standard for an award of punitive

---

[8] There is evidence in the record suggesting that in agreeing to the M2a Magnum, plaintiff relied upon a marketing brochure created by Biomet and provided by his surgeon. (Doc. #135-5, pp. 62-65.) To the extent plaintiff relies on such evidence to support his causation argument, the Court is unconvinced. Under Florida's learned intermediary doctrine, "the manufacturer's duty to warn runs to the physician, not to the patient." Beale, 492 F. Supp. 2d at 1368; see also Small v. Amgen, Inc., 134 F. Supp. 3d 1358, 1369 (M.D. Fla. 2015) ("[T]he Court concludes that defendants' duty to warn of the risks associated with the use of Enbrel ran to Ms. Small's physician, not Ms. Small.").

15

damages." (Id.) It also suggests that Indiana law, rather than Florida, should apply to this issue. (Id. pp. 23-24); see also Kirchman v. Novartis Pharm. Corp., 2014 WL 2722483, *3 (M.D. Fla. June 16, 2014) ("[T]he fact that Florida law governs liability and compensatory damages in this case does not necessarily mean it also governs punitive damages."). Plaintiff neither disputes nor concedes which state's law applies, but nonetheless argues there is sufficient evidence to submit the issue to a jury. (Doc. #135, pp. 17-18.) The Court agrees with plaintiff.

Under Indiana law, punitive damages may be awarded "only upon a showing that the defendant acted with 'malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, mere negligence, or other human failing.'" Bayes v. Biomet, Inc., 2020 WL 5659653, *1 (E.D. Mo. Sept. 23, 2020) (quoting Wohlwend v. Edwards, 796 N.E.2d 781, 784 (Ind. Ct. App. 2003)). In contrast, a defendant may be held liable for punitive damages under Florida law only if the defendant "was personally guilty of intentional misconduct or gross negligence." § 768.72(2), Fla. Stat. Under either state's law, the plaintiff must meet the requisite standard by "clear and convincing evidence." Ind. Code § 34-51-3-2; § 768.72(2), Fla. Stat. Having reviewed the evidence submitted by the parties, the Court finds that a genuine issue of material fact precludes summary judgment under either standard. See Nicholson v. Biomet, Inc., 2020 WL

16

3399899, *18 (N.D. Iowa Mar. 6, 2020) ("Defendants first argue that Indiana law, not Iowa law, should govern a punitive damages award. . . . The Court finds that under either standard, there is a genuine issue of material fact whether punitive damages are appropriate on the remaining claims.").

Plaintiff has produced evidence indicating Biomet was aware as early as 2006 that metal-on-metal devices produce metal wear debris, and that such debris may lead to elevated levels of cobalt and chromium. (Doc. #135-18.) The same evidence suggests Biomet was also aware that such elevated levels could produce various health hazards, including those eventually suffered by plaintiff. (Id.) While Biomet disputes the significance of this evidence (Doc. #140, p. 5), the Court finds it sufficient to create a genuine issue of material fact as to whether Biomet was aware of potential problems with the M2a Magnum and simply ignored them. See Bayes, 2020 WL 5659653, *2 ("Biomet contends that the method of FDA approval, the warnings included in the Instructions for Use, and Biomet's affirmative steps to make the M2a Magnum safe preclude a showing of complete indifference or conscious disregard under Missouri law, or of malice, fraud, gross negligence, or oppressiveness under Indiana law. But Plaintiffs set forth evidence that Biomet was aware of the serious risks of its metal-on-metal M2a Magnum implant. In any event, this Court, though well aware of the high standard of clear and convincing evidence,

is not now in a position to determine as a matter of law that Plaintiffs cannot make a submissible case for punitive damages." (citation omitted)); Hardison v. Biomet, Inc., 2020 WL 4334108, *19 (M.D. Ga. July 27, 2020) ("[T]here is a genuine issue of material fact that Biomet was aware of and ignored the issues with the M2a Magnum.  In short, Plaintiff has pointed to evidence that Biomet knew of issues with the M2a Magnum but decided against disclosing that information.  Accordingly, the Court DENIES Biomet's motion for summary judgment as to punitive damages at this time."  (citation and emphasis omitted)); Nicholson, 2020 WL 3399899, *19 (determining there was a genuine issue of material fact that Biomet was aware of issues and ignored them based on, *inter alia*, plaintiff's evidence that Biomet was aware the M2a Magnum caused elevated levels of metal ions in patients' bodies); cf. Morris, 2020 WL 5849482, *13 (granting summary judgment on punitive damages claim where plaintiff failed to produce evidence that Biomet had actual knowledge of a defect and that it deliberately disregarded that defect).  Although "[d]efeating a motion for summary judgment on a claim for punitive damages is an extraordinary high bar," Nunez v. Coloplast Corp., 461 F. Supp. 3d 1260, 1269 (S.D. Fla. 2020), the Court finds plaintiff has adduced sufficient evidence to do so.

Accordingly, it is now

**ORDERED:**

18

Defendants' Dispositive Motion for Summary Judgment and Memorandum of Law (Doc. #121) is **GRANTED in part and DENIED in part.** The motion is **GRANTED** as to (1) the manufacturing defect and failure to warn portions of the strict liability claim in Count One, (2) the breach of implied warranties claim in Count Three, (3) the breach of express warranty claim in Count Four, and (4) the standalone failure to warn claim in Count Five.  The motion is otherwise **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this __21st__ day of January, 2021.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record